IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONNA M. CONDEL,          )
                          )
        Plaintiff,        )
                          )
v.                        )          Civil Action No.  3:12CV212—HEH
                          )
BANK OF AMERICA, N.A., *et al.*,   )
                          )
        Defendants.       )

## MEMORANDUM OPINION

Plaintiff Donna M. Condel ("Condel") brings this breach-of-contract and fraud action against Bank of America, N.A. ("BANA") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively referred to as "Defendants") in an attempt to avoid the foreclosure sale of her home. After Condel initially filed suit in the Circuit Court for the City of Richmond, Virginia on February 9, 2012, Defendants timely removed the action to this Court on March 20, 2012. Condel filed an Amended Complaint on April 20. The matter now comes before the Court on Defendants' Motion to Dismiss, filed on May 2 pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, Defendants' motion will be granted.

## I. BACKGROUND[1]

The claims at hand arise out of a mortgage loan transaction entered into by Condel on September 24, 2007 for residential property located in Richmond, Virginia. The loan was evidenced by a signed Note and secured by a Deed of Trust. By way of merger, Defendant

---

[1] As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to her. *See Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

BANA became servicer of the underlying Note on July 1, 2011.  Of particular relevance here, the Note and Deed of Trust authorized BANA to accelerate the loan in case of default after giving at least 30 days' notice and allowing the borrower within 30 days to cure any deficiency in payments.  Specifically, paragraph 22 of the Deed of Trust provided, in pertinent part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security instrument.... The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(Defs.' Mot. Dismiss Ex. A, at 14.)  The Deed of Trust also expressly required than the parties exercise their "rights and obligations" in conformity with all "applicable law"—that is, "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." (*Id.* at 4, 12.)

Condel admits in her Complaint that, at some unspecified time, she "fell into arrears on the note" and defaulted on her mortgage. (Am. Compl. ¶¶ 14, 20.)  She alleges, however, that BANA at no point thereafter provided her with proper notice of default or acceleration as required by the Deed of Trust.  More precisely, she contends that although BANA "had a uniform practice of sending purported breach letters claiming to comply with the provisions set forth in deeds of trust requiring 30-day cure notices," such notices (1)

2

were backdated to inaccurately reflect a mailing date of more than 30 days before

foreclosure, and (2) improperly instructed borrowers to make their next monthly payment

less than 30 days from the actual due date of that payment. (*Id.* at ¶ 17.)

BANA is a participant in the federal Home Affordable Modification Program

("HAMP"), through which it receives incentives from the federal government to adjust the

monthly mortgage obligations of struggling homeowners. Condel alleges that she sought a

HAMP loan modification from BANA in early 2011. (*Id.* at ¶ 31.) In April and May 2011,

Condel claims that she complied with BANA's requests for information necessary to

process her application. (*Id.* at ¶¶ 32-35.) Indeed, attached to her Amended Complaint as

Exhibit C is a letter from BANA, dated May 3, 2011, confirming BANA's receipt of

Condel's "financial documents to support the [HAMP] loan modification eligibility review,"

and advising Condel that her application was under review. (*Id.* Ex. C.) Nonetheless,

Condel alleges that she received a notice of foreclosure on May 6, indicating that her home

would be foreclosed upon and sold at an auction May 24, 2011. (*Id.* at ¶ 36.)

Despite her receipt of a foreclosure notice, Condel contends that a BANA

representative at "her local Bank of America branch" assured her no such foreclosure would

occur, since Condel was then being considered for a HAMP loan modification. (*Id.* at ¶ 37.)

In fact, Condel alleges that "federal administrative HAMP guidelines" specifically

precluded BANA from foreclosing upon her home while reviewing her application. (*Id.*)

Notwithstanding BANA's assurances to the contrary, and although BANA allegedly

had not yet "provided Condel with a decision regarding her application" for a loan

modification, Condel asserts that BANA instructed its substitute trustee to proceed with

foreclosure on May 24, 2011, which the trustee "purported" to do. (*Id.* at ¶¶ 39-40.) Condel

claims, however, that the resulting sale was void (or "voidable") because it amounted to a

breach of the notice-of-acceleration provisions set forth in the Note and Deed of Trust. (*Id.*

at ¶ 40.) Additionally, she contends that the foreclosure was in violation of applicable

law—namely, federal HAMP guidelines, "which prohibited foreclosure" during the

pendency of Condel's HAMP application. (*Id.*)

At the foreclosure auction on May 24, BANA—"either directly or through" its

subsidiary—was the highest bidder. (*Id.* at ¶ 41.) BANA's loan, according to Condel, was

backed by, and ultimately assigned to, Defendant Freddie Mac. (*Id.* at ¶ 43.) To collect the

deficiency, Freddie Mac thereafter filed an unlawful detainer action against Condel in

General District Court for the City of Richmond. (*Id.* at ¶ 45.) After prevailing in the trial

court, Freddie Mac allegedly "non-suited" the action in the Circuit Court. (*Id.*)

Based on the foregoing, Condel filed suit in the Circuit Court for the City of

Richmond on February 9, 2012, alleging "Breach of Explicit Covenants in the Deed of

Trust" (Count One); "Breach of Contract" (Count Two); and "Fraud" (Count Three).

Although Counts One and Two seek different relief,[2] they assert the same legal claim—that

BANA breached the Deed of Trust by (1) failing to provide proper notice of its intent to

accelerate the loan; and (2) foreclosing on Condel's property during the pendency of her

HAMP application.  Count Three asserts that BANA fraudulently misrepresented its intent

to foreclose on Condel's property before reaching a decision on her application for a loan

modification.  Condel seeks quiet title, a declaratory judgment, and compensatory and

---

[2] Count One seeks quiet title to the parcel, whereas Count Two seeks compensatory damages.

punitive damages. Defendants timely removed to this Court on March 20, 2012, and their

Motion to Dismiss the Amended Complaint is now ripe for decision.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.... [I]t

does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To

survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief

must contain . . . a short and plain statement of the claim showing that the pleader is entitled

to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are

not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate

some factual enhancement within the complaint to cross the line between possibility and

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir.

2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a

reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550

U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is

context-specific and requires "the reviewing court to draw on its judicial experience and

common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual

allegations to be true and determine whether, viewed in the light most favorable to the

plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court may, however, consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In addition, the court may consider documents attached to the defendant's motion to dismiss if those documents are central to the plaintiff's claim or "sufficiently referred to in the complaint," so long as the plaintiff does not challenge their authenticity. *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006) (per curiam); *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### III. ANALYSIS

Defendants advance three principal arguments in support of their motion to dismiss Condel's Amended Complaint. First, as to Counts One and Two, they maintain that Condel's breach of her payment obligations under the Note precludes her from enforcing the terms of the parties' agreement, and that—in any event—Condel has not adequately alleged that BANA failed to send her proper notice of acceleration and foreclosure. Second, they assert that their failure to comply with relevant HAMP regulations, even if proven, does not support a private cause of action. And finally, Defendants argue that the facts underlying Condel's fraud claim, as alleged in the Amended Complaint, fail to overcome the specificity hurdle established by Federal Rule of Civil Procedure 9(b). This Court will consider each of these contentions, in turn.

**A.    *Counts One and Two – Inadequate Notice of Acceleration and Foreclosure***

Defendants first argue that Counts One and Two, alleging breach of the explicit

notice provision in the Deed of Trust, are unsustainable as a matter of law because Condel

committed a *prior* material breach.   Under Virginia law, a party who first materially

breaches a contract cannot enforce that contract.   *Horton v. Horton*, 487 S.E.2d 200, 203

(Va. 1997).   "A material breach is a failure to do something that is so fundamental to the

contract that the failure to perform that obligation defeats an essential purpose of the

contract."   *Id.* at 204.   Here, Defendants contend that Condel's failure to timely pay her

mortgage discharged BANA's duty under the Deed of Trust to provide at least 30 days'

notice prior to accelerating repayment or initiating foreclosure proceedings.   Indeed, Condel

concedes on the face of her Amended Complaint that she "fell into arrears" on her payment

obligation.   (Am. Compl. ¶¶ 14, 20.)   The only remaining issue, therefore, is whether a

borrower's default, as a matter of law, amounts to a "material breach" of a mortgage

contract such that it precludes the borrower from enforcing the lender's pre-foreclosure

obligations.   It does not, as two recent Virginia Supreme Court decisions make clear.[3]

First, in *Bayview Loan Servicing v. Simmons*, 275 Va. 114 (2008), the Virginia

Supreme Court enforced the terms of a deed of trust against a lender even after the borrower

had defaulted.   *Id.* at 120-22.   Specifically, the Supreme Court deemed the contested

foreclosure sale improper because the lender had failed to notify the borrower of its intent to

accelerate the loan, which was a condition precedent to acceleration under the deed of trust.

Although acknowledging that Virginia law "allow[s] a proper notice of foreclosure sale to

---

[3] Because this case is before this Court on diversity jurisdiction, this Court applies Virginia's body of substantive law.

exercise an *accrued* right of acceleration," the Court found that the defendant-lender had

"failed to fulfill the contractual condition precedent that would have given it such a right."

*Id.* at 121-22 (emphasis added). *Bayview* thus established that "a lender must comply with

all conditions precedent to foreclosure in a deed of trust"—including notice of default or

acceleration obligations—"even if the borrowers are in arrears." *Mathews v. PHH*

*Mortgage Corp.*, 724 S.E.2d 196 (Va. 2012) (discussing *Bayview*).

Similarly, the Virginia Supreme Court in *Mathews* confirmed that a borrower's

arrearage "does not allow the trustee to circumvent the conditions precedent" to foreclosure.

*Id.* at 199. Indeed, "[t]he conditions precedent in the deed of trust which govern the accrual

of [the trustee's] latent power to foreclose" do not become relevant *until* the borrower has

"breached the deed of trust in some way." *Id.* To prohibit a defaulting borrower from

bringing an action to enforce the conditions precedent to foreclosure in a deed of trust

"would nullify such conditions," and would make "[t]he mere fact of the borrower's breach

alone ..., *de facto*, the only condition precedent." *Id.* at 199-200. Such a rule, the Court

observed, "would defy common sense." *Id.* at 200; *see also Kersey v. PHH Mortgage*

*Corp.*, 682 F. Supp. 2d 588, 597 (E.D. Va. 2010) ("[T]he fact that the contract specifically

contemplates [Condel] falling into arrears by imposing obligations on [BANA] to do certain

things in the event of arrearage prior to commencing foreclosure ... suggests that simply

falling into arrears on the note is not a material breach."). Clarifying further that a

borrower's "non-payment of the note does not defeat an essential purpose of the contract,"

the *Mathews* Court ultimately concluded that "[b]orrowers may sue to enforce conditions

precedent to foreclosure even if they were the first party to breach the note secured by a deed of trust through non-payment." 724 S.E.2d at 200.

Applying the reasoning of *Bayview* and *Mathews* in the case at hand, Defendants' argument for dismissal *as a matter of law* plainly fails. Condel's non-payment of her mortgage did not relieve BANA of its obligation to provide 30 days' notice prior to exercising its rights of acceleration and foreclosure. Accordingly, Condel's admission in her Amended Complaint that she initially breached the terms of the *Note* does not render unsustainable her claim that BANA improperly foreclosed upon her property without fulfilling the preconditions set forth in the *Deed of Trust*.[4] Nonetheless, Defendants further challenge the sufficiency under Rule 12(b)(6) of the factual allegations pertaining to their purported failure to send contractually proper notice in advance of foreclosure.

In her Amended Complaint, Condel alleges that "[n]o-one acting as creditor sent to Condel any notice that complied with the language set forth in the deed of trust." (Am. Compl. ¶ 16.) She further alleges that BANA maintained a "uniform practice of sending ... back-dated" notices less than 30 days before acceleration of the recipient's loan. (*Id.* at ¶ 17.) Notably, however, neither of these allegations specifies whether Condel did *in fact* receive a notice (backdated or otherwise) *purporting* to advise her of BANA's intent to accelerate the balance of her mortgage loan.[5] Rather, Condel ambiguously and conclusorily

---

[4] As the Virginia Supreme Court noted in *Mathews*, "non-payment may be a material breach of a note, which may enable a lender to bring an action on it *independent of* the deed of trust." *Mathews*, 724 S.E. 2d at 200 n.2. But a borrower's failure to make timely payments under a note does not automatically discharge a lender's obligations under a separate deed of trust.

[5] Perhaps in an attempt to evidence BANA's purported backdating practice, Condel has attached to her Amended Complaint various "Notice of Intent to Accelerate" letters sent by BANA to *other* borrowers. (Am. Compl. Ex. A.) But Condel has not attached any letter addressed to her personally, and the notices provided bear no relation to the transaction at issue in this case.

alleges only that she did not receive *proper* notice under the Deed of Trust. If Condel did

not receive *any* ostensible notice of acceleration, she should so allege. Conversely, if she

did receive notice of some form, Rule 12(b)(6) requires that she provide at least some

minimally detailed allegations as to the contents and nature of the letter. Setting aside

Condel's "conclusory statement" that BANA did not "compl[y]" with its notice obligations

under the Deed of Trust, *see Iqbal*, 129 S. Ct. at 1949 ("[P]leadings that … are not more

than conclusions[] are not entitled to the assumption of the truth."), the scant facts provided

leave this Court unable to discern the factual basis of Condel's claims. Because Condel has

not alleged "enough facts to state a claim to relief that is plausible on its face," this

component of Counts One and Two "must be dismissed." *See Twombly*, 550 U.S. at 570.

**B.    *Counts One and Two – Violation of Application HAMP Guidelines***

The Court turns next to Condel's claim that Defendants failed to exercise their

contractual rights in accordance with "applicable law" because they foreclosed on her

property while her application for a HAMP loan modification was still pending. Established

by the U.S. Department of Treasury ("Treasury") in February 2009, HAMP aims to prevent

avoidable foreclosures by encouraging loan servicers to reduce the monthly mortgage

payments of struggling homeowners. More specifically, HAMP enables certain

homeowners who are in default or at imminent risk of default to obtain "permanent" loan

modifications, by which their monthly mortgage payments are reduced to not more than

thirty-one percent of their monthly income for a period of at least five years. As this Court

explained in another case:

> HAMP modifications essentially proceed in two steps. First, the loan servicer
> compares the net present value ("NPV") of a borrower's existing loan with the

NPV of a hypothetical HAMP-modified loan to determine whether it would be more profitable to modify the borrower's loan or permit it to proceed to foreclosure. If modification appears to be desirable, the servicer offers the borrower a three-month Trial Period Plan ("TPP"), the terms of which are memorialized in a TPP Agreement. If all conditions of the TPP Agreement are satisfied, the borrower then proceeds to Step Two, at which he or she is offered a permanent loan modification.

*Bourdelais v. JPMorgan Chase Bank, N.A.*, No. 3:10cv670, 2011 U.S. Dist. LEXIS 35507,

at *3 (E.D. Va. April 1, 2011). On January 25, 2010, BANA renewed its commitment to the

HAMP program. (Am. Compl. ¶ 27.)

Although participation in HAMP is required for government-sponsored entities

("GSEs") such as Fannie Mae and Freddie Mac, HAMP participation is otherwise voluntary.

In exchange for their enrollment in the program, loan servicers receive from the government

a $1,000 payment for each permanent HAMP modification they offer. Non-GSE servicers

who elect to join are required to enter into a Servicer Participation Agreement ("SPA") with

the federal government which expressly incorporates the Treasury's Program

Documentation. Thus, in order to receive incentive payments, servicers must comply with

all HAMP guidelines, procedures, and supplemental directives promulgated by Treasury.

*See Winn v. Chase Mortgage Servs.*, No. 2:10cv395, 2010 U.S. Dist. LEXIS 143041, at *6-7

(E.D. Va. Oct. 29, 2010). One such directive, on which Condel now relies, generally

prohibits servicers from proceeding with a foreclosure sale for any potentially eligible loan

until the borrower has been evaluated for the HAMP program and has been determined to be

ineligible or has declined a TPP offer. U.S. Dep't of Treasury, HAMP Supplemental

Directive No. 09-01, at 14 (April 6, 2009).

Although loan servicers are obligated to comply with HAMP guidelines in order to receive servicer benefits, courts have universally held that a lender's violation of HAMP regulations does *not* create a private right of action for borrowers. *See Bourdelais*, 2011 U.S. Dist. LEXIS 35507, at *9-10 (collecting cases). Courts have also flatly rejected attempts by borrowers to assert contract claims as "incidental beneficiaries" of servicers' agreements with the government. *Pennington v. PNC Mortgage*, No. 2:10cv361, 2010 U.S. Dist. LEXIS 143157, at *11-12 (E.D. Va. Aug. 11, 2010) (same). Finally, most courts have also concluded that a borrower cannot sue for breach-of-contract directly under his TPP agreement—for instance, where a servicer declines to grant a permanent loan modification at the conclusion of the trial period. Here, however, Condel argues that BANA's obligation to exercise its rights under the Deed of Trust "subject to any requirements and limitations of Applicable Law" incorporated *as a term of the parties' agreement* the prohibition in Supplemental Directive No. 09-01 on foreclosure during the pendency of a borrower's HAMP application. In response, Defendants assert that "[o]nly the direct parties to the [SPA] contract can enforce the HAMP agreement," such that "any attempts by [Condel] to recover for alleged violations of HAMP fail as a matter of law." (Def.'s Mem. Supp. 11.)

The Virginia Supreme Court in *Mathews* considered squarely "the question of whether [an administrative] [r]egulation [may be] incorporated into [a] Deed of Trust as a condition precedent to foreclosure." *Mathews*, 724 S.E. 2d at 200. At issue in that case was a term in the parties' deed of trust which provided: "This Security Instrument does not authorize acceleration or foreclosure if not permitted by the regulations of the Secretary [of the U.S. Department of Housing and Urban Development]." *Id.* at 201. More generally, the

12

deed of trust restricted the defendant-lender's right of acceleration "as limited by regulations issued by the Secretary." *Id.* Relying upon those provisions, the plaintiff-borrower argued that the defendant's failure to conduct a "face-to-face interview" prior to foreclosure, as required by 24 C.F.R. § 203.604(b), constituted an actionable breach of contract. As in this case, however, the defendant countered that the plaintiff "could not sue to enforce the Regulation because ... it conferred no private right of action." *Id.* at 198.

As the *Mathews* Court explained, "[a] deed of trust is construed as a contract under Virginia law, and we consider the words of a contract within the four corners of the instrument itself." *Id.* at 200-01 (internal quotation marks and citations omitted). Thus, a deed of trust must be

> construed as written, without adding terms that were not included by the parties. When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.

*Uniwest Constr., Inc. v. Amtech Elevator Servs.*, 280 Va. 428, 440 (2010) (citation omitted). Employing those standards in *Mathews*, the Virginia Supreme Court deemed "clear and unambiguous" the provisions in the deed of trust incorporating regulations issued by the HUD Secretary. 724 S.E. 2d at 201. More precisely, the Court found the provisions to "express the intent of the parties that the rights of acceleration and foreclosure [] not accrue under the Deed of Trust unless permitted by HUD's regulations." *Id.* The defendant-lender was therefore required to comply with the Regulation in question not merely under its SPA

13

contract with the federal government, but also as a condition precedent to acceleration and

foreclosure under the parties' deed of trust. *Id.* at 203.

> *Mathews* thus stands for the proposition that,

>> as a matter of Virginia law, when a deed of trust expressly states on its face
>> that it "does not authorize acceleration or foreclosure if not permitted by"
>> some external set of conditions identified within the deed of trust, those
>> conditions are fully incorporated as conditions precedent to acceleration and
>> foreclosure.

*Id.* at 202.  Consequently, Defendants' argument that Condel cannot, as a matter of law, rely

in her breach-of-contract action upon extrinsic statutes, regulations, or directives is

misguided, even if such outside sources would not independently support a private cause of

action.  Here, the Deed of Trust does not explicitly reference Treasury regulations as

restricting BANA's particular rights of acceleration or foreclosure.  However, the Deed of

Trust requires *generally* that *"[a]ll* rights and obligations contained in" the Deed of Trust be

exercised in accordance with "any requirements and limitations" of "*all* controlling

applicable federal, state and local statutes, regulations, ordinances and administrative rules

and orders (that have the effect of law) as well as all applicable final, non-appealable

judicial opinions." (Defs.' Mem. Supp. Ex. A, at 4, 12.)  The dispositive question is

whether this reference to "all controlling applicable ... administrative rules and orders (that

have the effect of law)" clearly expresses the parties' intent that BANA's rights of

acceleration and foreclosure be bound by pertinent Treasury directives—including those

issued *after* the execution of the Deed of Trust.

Most courts construe narrowly the phrase "all applicable law" (or similar language)

in a contract. *See Polinovsky v. Deutsche Lufthansa, AG*, No. 11CV780, 2012 WL

14

1080415, at *3 (N.D. Ill. March 30, 2012) (discussing numerous cases that have "rejected the argument that a generic boilerplate reference to compliance with all 'applicable law' incorporated certain specific regulations into the contract at issue"). Taken in its "plain, ordinary, and popular sense," the term "applicable law" refers to the then-existing body of law that applies directly to the contract in question, or to which the parties are otherwise subject in the performance of their contractual duties and obligations. In other words, the phrase does not appear to incorporate laws which are not *already* applicable (even if otherwise relevant) to the parties or their agreement. HAMP guidelines, for example, are not of themselves immediately "applicable" to the contractual relationship between a lender and borrower. For that reason, it would seem that inclusion of an "applicable law" term in a mortgage loan contract would not impose on a lender a contractual obligation—enforceable by the borrower—to comply with such administrative rules and regulations. Regardless, even if Supplemental Directive 09-01 were "applicable" to the parties' agreement in the abstract, its date of issuance places it beyond even the broadest reading of the "controlling applicable" law provision in this case.

General precepts of contract law direct that, absent clear language to the contrary, courts should not interpret contracts to incorporate *future* changes to the law. *Cf. Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 405 (1983) (finding contract to incorporate future laws only where it explicitly stated that it extended to "relevant present and future state and federal laws"). Rather, contracts are generally understood to incorporate only those laws which exist at the time of formation. *See Gazale v. Gazale*, 219 Va. 775, 777 (1979) ("New statutes are usually presumed to operate prospectively only, ...

15

and contractual rights and duties are controlled by the law in effect at the time the contract

was executed."); 11 Williston on Contracts § 30:23 (4th ed. 2012) ("[A]s a rule of

construction, changes in the law subsequent to the execution of a contract are not deemed to

become part of agreement unless its language clearly indicates such to have been the

intention of the parties."); *see, e.g., Rutherford Farmers Coop. v. MTD Consumer Group,*

*Inc.*, 124 Fed. App'x 918, 920 (6th Cir. 2005) ("Because [the provision at issue] does not

refer to future laws, that clause, taken in its plain, ordinary, and popular sense, incorporates

only laws existing at the time of contract formation.") (internal quotation marks and citation

omitted). Here, the Department of Treasury did not issue Supplemental Directive 09-01,

prohibiting foreclosure during the review of a HAMP application, until April 2009—more

than a year after Condel executed the instant Deed of Trust in September 2007. Because the

plain meaning of the "controlling applicable" law provision of the Deed of Trust does not

reveal an intent by the parties to be bound by future laws, this Court will not infer one. The

Court therefore concludes that, whatever the scope of the provision as to laws in existence at

the time of the contract's execution, the Deed of Trust does not incorporate laws enacted or

issued thereafter, and Condel therefore cannot rely on BANA's purported violation of

Supplemental Directive 09-01 as grounds for breach of contract.

Because Condel has not alleged a plausible breach-of-contract claim,[6] Counts One

and Two of her Amended Complaint will be dismissed.

---

[6] To the extent Condel is asserting in her Amended Complaint that BANA agreed orally to
modify the terms of the Deed of Trust to conform to Supplemental Directive 09-01, her claims must
also be dismissed. Specifically, Condel alleges that "a representative of [BANA] at her local Bank
of America branch ... repeatedly assured Condel ... that it would forego foreclosure while
considering her application for a [HAMP] loan modification." (Am. Compl. ¶ 37.) Under Virginia
law, however, all contracts related to the purchase of real estate—including a mortgage lien—must

## C.    *Count Three – Fraud*

Under Virginia law, a claim for actual fraud requires "(1) a false representation, (2)

of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, [and] (5)

reliance by the party misled, ... (6) resulting [in] damage to [that] party." *State Farm Mut.*

*Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (Va. 2005) (citation omitted).  In general, "if

a defendant makes a promise that, when made, he has no intention of performing, that

promise is considered a misrepresentation of present fact and may form the basis for a claim

of actual fraud." *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008).  However,

the plaintiff must clearly allege that the promisor did not intend to perform the promise *at*

*the time* the promisor made the purportedly fraudulent statement. *Station # 2, LLC v. Lynch*,

695 S.E.2d 537, 540 (Va. 2010).  Alternatively, a negligent (but not knowingly false)

misrepresentation may support an action for constructive fraud in Virginia; all other

elements remain the same. *Sales v. Kecoughtan Hous. Co.*, 279 Va. 475, 481 (2010).

BANA first argues that Condel's fraud claim fails for lack of specificity.  Federal

Rule of Civil Procedure 9(b) subjects fraud claims to a heightened pleading standard.

Specifically, a party alleging fraud must "state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Such "circumstances" include "the

time, place and contents of the false representation, as well as the identity of the person

---

be in writing to satisfy the statute of frauds. *See* Va. Code Ann. § 11-2(6). By the same token, any
modification of a mortgage agreement is not enforceable unless it is in writing. *See Lindsay v.
McEnearney Assocs.*, 260 Va. 48, 53 (2000) ("[W]hen ... a contract is required to be in writing
pursuant to Code § 11-2, any modification to that contract must also be in writing and signed by the
party to be charged or his agent."); *see also Mcinnis v. BAC Home Loan Servicing, LP*, No.
2:11CV468, 2012 WL 383590, at *8 n.5 ("To the extent Plaintiff is alleging a verbal contract to
permanently modify her loan exists, such a contract would be barred in Virginia by the statute of
frauds.") (collecting cases). Condel therefore cannot rely on the purported oral representations of a
BANA agent as the basis for her breach-of-contract claims.

making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal citations omitted). Notably, Rule 9(b) explicitly excuses a party from pleading fraudulent intent under an elevated pleading standard. Still, the plaintiff's allegations must be sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 686-87. "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n. 5 (4th Cir. 1999).

The allegations at bar fall short of the Rule 9(b) threshold. Although Condel asserts that she spoke on numerous occasions with "a representative" at her "local Bank of America branch" who "assured" her that BANA "would forego foreclosure" while reviewing her HAMP application, Condel does not specify (1) the identity of the BANA representative with whom she "repeatedly" communicated; (2) the date(s) on which such conversations allegedly occurred; or (3) the precise location of her local Bank of America branch. Nor does the Amended Complaint provide any detail as to the exact nature of the promises purportedly made by the unidentified BANA agent. Because it lacks "the who, what, when, where, and how of the alleged fraud," *Wilson*, 525 F.3d at 379 (internal quotation marks and citations omitted), the Amended Complaint does not plead fraud with the particularity demanded by Rule 9(b). Accordingly, dismissal of Count Three is appropriate.[7]

---

[7] The Court need not address Defendants' other arguments in favor of dismissal of Count Three.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, and

Condel's Amended Complaint will be dismissed in its entirety, without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
United States District Judge

Date: July 5 2012
Richmond, VA

19